IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BERNARD SMITH,      #00360-016, | ) Civil Action No.  3:07-64-MBS-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BUREAU OF PRISONS; | ) |
| L. CARSON, UNIT MANAGER; AND | ) |
| K. MACK, SUPERVISOR OF EDUCATION, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |
| _____ | ) |

Plaintiff filed this action, pro se, on January 8, 2007.[1] He is incarcerated at the Federal Correctional Institution in Estill, South Carolina ("FCI-Estill"). Defendants are the Bureau of Prisons ("BOP"); Liz Carlson ("Carlson"), the Unit Manager at FCI-Estill[2]; and Katheryn Mack ("Mack"), a Unit Manager at FCI-Estill. On May 21, 2007, Defendants filed a motion to dismiss and for summary judgment. Plaintiff, because he is proceeding pro se, was advised on May 25, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion to dismiss and for summary judgment could result in the dismissal of his complaint. Plaintiff filed what appears to be a response on July 25, 2007.[3]

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this report and recommendation is entered for review by the court.

[2]Defendants provide that the correct spelling of this defendant's name is "Carlson." Defendants' Motion to Dismiss and for Summary Judgment at 2.

[3]This pleading is titled "motion to amend complaint." It, however, appears to be a response to Defendants' motion to dismiss and for summary judgment, as it specifically addresses the issues raised in Defendants' motion to dismiss and for summary judgment.

DISCUSSION

Plaintiff was convicted in the District of Columbia of rape and assault with a deadly weapon in violation of the D.C. Code. He also has a probation violation term. He is serving an aggregate term of seventeen years to life. Plaintiff is eligible for parole and will have his next parole hearing in April 2008. See Defendants' Ex. A.[4]

Plaintiff was originally housed in BOP custody as a state boarder from the D.C. Department of Corrections in September 1980. Mack Decl. (Defendant's Ex. K), Para. 9. He left BOP custody in November 1991 and did not return to federal custody until September 2002, after implementation of the D.C. Revitalization Act (the "Act").[5] Under the Act, all inmates in the D.C. Department of Corrections were transferred to the BOP or facilities contracted by the BOP. See D.C. CODE § 24-101(a) and (b). All D.C. offenders transferred under this section "shall be subject to any law or regulation applicable to persons committed for violations of the laws of the United States consistent with the sentence imposed, and the Bureau of Prisons shall be responsible for the custody, care, subsistence, education, treatment and training of such persons." D.C. CODE § 24-101(b).

Plaintiff appears to allege Bivens[6] claims. In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983:

---

[4] "Defendants' Ex. " refers to exhibits to Defendants' motion to dismiss and for summary judgment.

[5] The Act is formally know as Section 11201 of Chapter 1 of Subtitle C of Title XI of the National Capital Revitalization and Self-Government Improvement Act of 1997. See Publ. L. 105-33, 111 Stat. 740 (August 5, 1997). The Act is codified in Title 24, Chapter 12 of the D.C. Code.

[6] See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

2

federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825 (1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Osabutey v. Welch, 857 F.2d 220, 221-223 & n. 5 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 & n. 2 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).

In his complaint, Plaintiff alleges that Defendants misapplied a BOP policy concerning the provision of free postage and wrongly required him to participate in a literacy program. Defendants contend that their motion to dismiss and for summary judgment should be granted because: (1) Plaintiff failed to exhaust his administrative remedies as to his postage claim, (2) this court lacks subject matter jurisdiction as to claims against the BOP and against Defendants Carlson and Mack in their individual capacities, (3) Plaintiff fails to state a claim concerning the literacy program as he does not implicate a constitutionally protected right, and (4) the individual Defendants are entitled to qualified immunity.

    1.        Sovereign Immunity

Defendant BOP contends that Plaintiff's Bivens claim against it should be dismissed because the BOP is not a proper defendant in a Bivens claim. Defendants Carlson and Mack contend that Plaintiff cannot bring a Bivens claim against them in their official capacities.

The United States cannot be sued without its express consent, and express consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). A Bivens action may not be brought against agencies or departments of the United States. FDIC v. Meyer, 510 U.S. 471, 486 (1994) (declining to extend Bivens remedy to federal agencies). Hence, the BOP is entitled to summary dismissal.

The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir. 1985); cf. Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Claims against Defendants Carlson and Mack in their official capacities are barred by the doctrine of sovereign immunity. See Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir. 1986), cert. denied, 481 U.S. 1054 (1987); Gilbert, 756 F.2d at 1458; see also Randall v. United States, 95 F.3d 339, 345 (4th Cir.1996) ("Any remedy under Bivens is against federal officials individually, not the federal government.").

Plaintiff, in his July 2007 pleading, appears to assert that this court has waived sovereign immunity pursuant to 28 U.S.C. § 1346 and in 5 U.S.C. § 702. Plaintiff fails to show that either of these waivers are applicable to this action. Title 28 U.S.C. § 1346 is the Federal Tort Claims Act ("FTCA"), which is a waiver of sovereign immunity for certain tort actions by federal officials. Here, however, Plaintiff's claims concern deliberate indifference or intentional violation of his constitutional rights and thus Plaintiff fails to show that the FTCA is a proper waiver of sovereign immunity in this action. Plaintiff also attempts to claim a waiver of sovereign immunity under 5 U.S.C. § 702 which is a portion of the Administrative Procedures Act ("APA"). The APA, however, is not applicable to inmates of the Federal BOP. See 18 U.S.C. § 3625. Additionally, the APA does not constitute a waiver of immunity such that individuals can be sued for money damages, but

4

instead provides an avenue for redress of legal wrongs caused by official government actions. See 5 U.S.C. § 702.

    2.    <u>Exhaustion</u>

Defendants contend that Plaintiff's claims as to postage should be dismissed because Plaintiff failed to exhaust his available administrative remedies.[7] Plaintiff argues that he does not have to exhaust his administrative remedies pursuant to the futility doctrine. He also appears to contend that he is now seeking damages under the FTCA.

The BOP has a three-tiered administrative grievance process. See 28 C.F.R. §§ 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. Id. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. Id. Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a). A claim has not been administratively exhausted until it has been filed with the General Counsel. Administrative complaints must be filed within 20 days of the date of incident giving rise to the complaint occurred. 28 C.F.R. § 542.14(a).

Defendants provide that Plaintiff filed an informal grievance with his unit team in March 2006 concerning indigent stamps. Defendants' Ex. F, Informal Resolution and Response. When

---

[7]Defendants concede that Plaintiff exhausted his administrative remedies regarding his literacy program claim. Defendants' Motion to Dismiss and for Summary Judgment at 8.

the response did not satisfy him, Plaintiff filed a formal request for administrative remedy with the Warden of FCI-Estill. Defendants' Ex. G, Administrative Remedy No. 407715-F1 and Response. The Warden denied Plaintiff's request on April 7, 2006. Id. Plaintiff appealed the decision to the BOP's Southeast Regional Office. Defendants' Ex. H, Administrative Remedy No. 407715-R1 and Response. The matter was reviewed and denied on May 8, 2006. Id. Plaintiff attempted to appeal the matter to the National Inmate Appeals Branch, but the appeal was rejected due to technical filing problems. Defendants' Ex. I, Rejection Notice. Plaintiff was given an opportunity to correct the deficiency and refile, but he never did so. Defendants' Ex. J., Administrative Remedy Log.

In his July 2007 opposition memorandum, Plaintiff appears to assert that this action should not be dismissed for failure to exhaust based on futility and because he has a tort claim pending in the administrative system pursuant to the FTCA. Plaintiff has not shown any "futility exception" to the exhaustion of administrative remedies requirement established by the PLRA. See Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000). The PLRA exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. Booth v. Churner, 532 U.S. 731, 741 (2001)("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Although Plaintiff may have a FTCA pending administrative claim, it does not excuse Plaintiff's failure to exhaust his claim under the PLRA. Further, Plaintiff admits that the FTCA administrative claim is not exhausted.

3.     Literacy Program

Plaintiff alleges that Defendants violated his due process rights and the Ex Post Facto Clause by requiring him to attend literacy classes. Defendants contend that Plaintiff fails to establish an Ex Post Facto or due process violation.

6

Participation in a functional literacy program in the BOP is mandatory for all mentally capable inmates who are not functionally literate. 18 U.S.C. § 3624(f). The "mandatory period" in 18 U.S.C. § 3624(f)(2) is defined by 28 C.F.R. § 544.70 which provides:

> Except as provided for in § 544.71, an inmate confined in a federal institution who does not have a verified General Educational Development (GED) credential or high school diploma is required to attend an adult literacy program for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first.

28 C.F.R. § 544.70. Various incentives exist to encourage an inmate to attain the GED or high school diploma. One incentive concerns work assignments. Inmates who have not attained their GED or high school diploma are generally denied eligibility for the higher graded prison work assignments. 28 C.F.R. § 544.74.

Mack states that during Plaintiff's prior incarceration with the BOP, there were two policies in effect. One, in place prior to May 1, 1991, required an inmate to complete 90 satisfactory days in an Adult Basic Education program and score greater than an eighth grade level on the Adult Basic Learning Examination. On May 1, 1991, a policy was implemented that required an inmate to complete 120 hours of satisfactory classroom participation and meet the eighth grade level or better on the Adult Basic Learning Examination. Mack states that Plaintiff has not completed the requirements under either policy, as he has not scored above the eighth grade level on the Adult Basic Learning Examination. Mack Decl., Pars. 4, 12-13.

Mack states that she reviewed Plaintiff's education status shortly after his arrival at FCI-Estill in late 2005. She noted that the electronic records indicated that Plaintiff possessed a GED or high school diploma, but it was not verified, so she took steps to verify the information. Mack states that queries to the D.C. Department of Corrections and reviews of BOP records did not

document that Plaintiff had a GED or high school diploma, so she determined that Plaintiff was required to participate in the literacy program. Mack Decl., Para. 7. Mack told Plaintiff that because there were two literacy policies in effect during his prior incarceration with the BOP, she would apply the less stringent of the two policies, requiring him to complete 120 hours of satisfactory classroom time. She had records reflecting Plaintiff's prior classroom participation of 88 hours, so she told Plaintiff that he was only required to complete an additional 32 hours to meet the 120-hour requirement. Plaintiff enrolled in the program and did participate for a time, but later elected to withdraw from the program. Mack Decl., Paras. 12-15. As a result, Plaintiff is not eligible for assignment to higher grade prison work assignments. See 28 C.F.R. § 544.74(a).

Plaintiff appears to claim that his due process rights were violated because the literacy policy prohibits him from receiving a preferred prison job or higher pay. Defendants contend that due process is not implicated by the application of the literacy policy to Plaintiff because such a claim does not implicate a liberty interest.

Plaintiff fails to show that his inability to obtain a better or higher paying job if he did not participate in the literacy program was a violation of his due process rights. Prisoners have no entitlement to a job at a certain pay level, or even to any job. See Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)(custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment

because lack of employment was clearly within the range of confinement which could be expected by most inmates).[8]

Plaintiff states that he should be subject to the rules of the D.C. Department of Corrections concerning literacy programs. He refers to D.C. Literacy Code 24-1001 and references attachments. There are, however, no attachments to Plaintiff's complaint. The D.C. Code section cited by Plaintiff concerns the Interstate Corrections Compact. It provides:

> All inmates confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with similar inmates of the receiving state[9] confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which the inmate would have had if confined in an appropriate institution of the sending state.

D.C. CODE § 24-1001, Art. IV(e).

Further, Plaintiff has not show that he has any constitutionally protected "right to be ignorant" or "right to remain uneducated." See Rutherford v. Hutto, 377 F.Supp. 268, 272 (E.D.Ark. 1974). Other courts that have considered the issue of an inmate being required to participate in a literacy program have held that such requirements do not violate the Constitution. See, e.g., Martin v. O'Brien, 207 Fed. Appx. 587, 589-590 (6th Cir. 2006)(BOP's refusal to recognize correspondence course high school diploma as satisfaction of literacy requirement does not violate due process or

---

[8]Additionally, to the extent Plaintiff alleges that he cannot earn good-time credits because he has not completed the literacy program, such a claim fails. Although a prisoner may have due process rights as to good-time credits which are taken away from him, the opportunity to earn good-time credits is not a constitutionally established liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see Sandin v. Conner, 515 U.S. 472 (1995).

[9]As used in this statute, the term "state" encompasses the United States. D.C. CODE § 24-1001, Art. II (a).

9

a liberty interest); Marks v. Steward, 68 Fed. Appx. 53 (9th Cir. 2003)(no equal protection violation when inmate is not promoted due to failure to take and pass literacy exam); Rutherford, 377 F. Supp. 272.  To the extent that Plaintiff claims he should have the benefit of the "grandfather" clause at another institution, his claim also fails.  Removal of "grandfather" clause protection does not violate due process or implicate a protected liberty interest.  Robinson v. Hastings, 2006 WL 95018, *3 (E.D.Ky. 2006).

Plaintiff claims that Defendants' actions violated his ex post facto rights.  Defendants contend that Plaintiff fails to establish an ex post facto violation because he cannot show that his punishment has been increased or lengthened by the requirement that he participate in the literacy program.

Article I, § 10, of the Constitution forbids the States from passing ex post facto laws.  U.S. Const. Art. I, § 10, c. 1. "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage' [to covered offenders] ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable."  California Dep't of Corr. v. Morales, 514 U.S. 499, n.3 (1995).  Here, Plaintiff has not shown that his participation or refusal to participate in the literacy program extends his sentence or increases the punishment for his criminal offenses.  Defendants provide that because Plaintiff's term of incarceration is not controlled by the Violent Crime Control and Law Enforcement Act of 1994 or the PLRA, there is no adverse impact on his ability to earn good-time credits.

4.      Postage

Plaintiff alleges that Defendants violated his constitutional rights by failing to provide him with free postage for his legal and other mail.  Defendants contend that even if Plaintiff could

show he exhausted his administrative remedies, he fails to show that he has a right to free postage and fails to show any constitutional violation as he has not demonstrated any actual injury.

Federal regulation provides that inmates are ordinarily responsible for payments of their own postage costs. 28 C.F.R. § 540.21(a). Inmates who are indigent will be provided postage for legal and administrative remedy mailings. 28 C.F.R. § 540.21(d). They may also be provided postage for social correspondence and in verified emergency situations. 28 C.F.R. §§ 540.21 (e) and (f). With the exception of a verified emergency, the provision of postage at government expense is subject to limitations. 28 C.F.R. §§ 540.21 (d)-(f). The Warden is allowed to impose restrictions of the provision of free postage in order to curb abuse of the provision. 28 C.F.R. §§ 540.21(d) and (e). The Warden at FCI-Estill has instituted a policy that allows the Unit Manager to provide up to five first class postage stamps each week to an inmate sending legal mail or administrative remedy filings. Defendants' Ex. M, FCI-Estill Institution Supplement 5265.11D. An inmate who has depleted his commissary account for at least two separate consecutive months and then restored money to the account will be given the necessary stamps, but will be required to reimburse the government for those stamps when he obtains funds. Id. Defendants provide that the practice allows inmates timely access to the courts and to the administrative grievance process while preventing abuse of the free postage provision.

On March 3, 2006, Plaintiff made a request to his Unit Manager, Carlson, for postage to send legal mail. Carlson reviewed Plaintiff's commissary account history and found that while he was not indigent, he met the criteria for being provided postage on a reimbursement basis. Records reflected that Plaintiff received regular deposits into his account, he received $343.55 over the preceding six months, and he had a balance of $1.55. Plaintiff was provided the 39 stamps he

11

requested, but was required to sign a reimbursement form. On March 21, 2006, Plaintiff requested and received an additional 36 stamps and was again required to sign a reimbursement form. Defendants' Ex. G, Plaintiff's Request for Administrative Remedy and Response.

Even if Plaintiff could show that he exhausted his administrative remedies as to this claim, he fails to show that he has an unlimited right to free postage. White v. White, 886 F.2d 721, 723 (4th Cir.1989)( "prisoners do not have an unlimited right to free postage in connection with the right of access to the courts."). Further, Plaintiff fails to show actual injury from having to sign a reimbursement form in order to obtain stamps. In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

     5.    Qualified Immunity

Defendants Carlson and Mack contend that they are entitled to qualified immunity. The Supreme Court in Harlow, established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants Carlson or Mack violated his established constitutional or statutory rights. Therefore, Defendants Carlson and Mack are entitled to qualified immunity in their individual capacities.

### MOTION FOR A TEMPORARY INJUNCTION

On August 15, 2007, Plaintiff filed a motion for a "temporary" injunction. He claims that the BOP is making withdrawals from his trust fund in violation of established law and BOP policy. Plaintiff claims "that an account containing less than $50.00 must be waived before the B.O.P. can

13

begin to make deductions." He appears to claim that the BOP cannot make deductions from an account containing less than $50; he has the right to use the funds he receives from outside sources as he wishes for things such as phone calls, postage stamps, and medical supplies; and these outside funds should not be subject to encumbrance for his PLRA filing fee payments. Defendants contend that Plaintiff's trust account was properly debited and Plaintiff fails to show that injunctive relief should be granted.

The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c) the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is

limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff has filed several civil actions in this district. With each civil action he files, Plaintiff incurs a debt to the United States of $350.[10] Plaintiff filed this action and another civil action (3:07-0065-MBS-JRM) on January 8, 2007. The undersigned's March 9, 2007 order directed "[t]he agency having custody of the plaintiff shall collect payments from the prisoner's trust account in accordance with 28 U.S.C. § 1915(b)(1) and (2), until the full filing fee is paid." Doc. 12. This statute provides, in part,:

> (a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor...
>
> (2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.
>
> ***
>
> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment

---

[10] 28 U.S.C. § 1914(a) provides:
The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350, except that on application for a writ of habeas corpus the filing fee shall be $5.

> of any court fees required by law, an initial partial filing fee of 20 percent of the **greater of**--
>
>> (A) the average monthly deposits to the prisoner's account; or
>>
>> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915 (emphasis added).

It is recommended that Plaintiff's motion for a temporary injunction be denied. First, Plaintiff has not shown that he will suffer irreparable harm if the injunction is denied. Plaintiff claims that without the injunction he will not be able to use funds sent him by family and friends to purchase "necessities from the commissary including telephone credits and stamps for correspondence." Defendants provide that Plaintiff has manipulated his account such that he does not have $10 in his account on the first of the month, such that when encumbered funds are released, they are left in his account rather than being sent to Court to pay his obligations. Defendants' Ex. A. Plaintiff has not demonstrated that he is unable to communicate with his family and friends via telephone or correspondence. Additionally, the BOP has a process by which inmates can obtain stamps for correspondence if they are without funds. See 28 C.F.R. § 540.21(d)-(f). Defendants provide that Plaintiff's proposed requirement that they obtain Plaintiff's signature each and every time an encumbrance is placed on his account for a PLRA would be extremely time consuming and more labor intensive. Plaintiff has not shown that granting his injunction would be in the public interest. Finally, Plaintiff has not shown that he is likely to be successful in the merits of the

underlying case, as discussed above. The issue in his preliminary injunction is unrelated to the underlying action. Further, Plaintiff has not shown that he has exhausted his administrative remedies as to claims about his trust account.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion to dismiss and for summary judgment (Doc. 26) be granted. It is also recommended that Plaintiff's motion for temporary injunction (Doc. 34) be denied.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

January 24, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**
**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).